

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00066-CR

WILLIAM JASON PUGH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 22,041-2013

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

Under procedures authorized by Article 38.37 of the Texas Code of Criminal Procedure, William Jason Pugh was notified that, as part of the prosecution against him for two counts of aggravated sexual assault of S.C.,[1] a child, in Wood County, the State would seek to introduce evidence that Pugh had committed four extraneous offenses of aggravated sexual assault of children, including E.B. in Wood County, C.M. in both Wood County and Rains County, and the alleged victim in this case, S.C., in a separate act in Wood County. The extraneous-offense evidence was admitted, the jury found Pugh guilty of both counts, and he was sentenced to two terms of life imprisonment to run concurrently.

Here, Pugh appeals from his conviction, in trial court case number 22,041-2013, of digital penetration of the sexual organ of S.C. when she was a child younger than fourteen years of age.[2] He argues that the State's notice of intent to introduce extraneous-offense evidence was defective, the extraneous-offense evidence fell short of the standard to allow its admission, and the jury instructions failed to instruct the jury how to apply the beyond-a-reasonable-doubt standard to the extraneous offenses.

---

[1]To protect the children's privacy, we refer to the parents by pseudonyms and the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014).

[2]In a companion appeal, our case number 06-14-00067-CR, Pugh appeals his conviction and sentence from trial court case number 22,042-2013 in Wood County, in which he was prosecuted for penetration of S.C.'s sexual organ with Pugh's sexual organ when S.C. was less than fourteen years of age. By separate opinion, we also decide that appeal this date.

We affirm the trial court's judgment because (1) Pugh failed to preserve error regarding the State's Article 38.37 notice, (2) the trial court was within its discretion to admit extraneous-offense evidence, and (3) there is no error in the jury charge.

*(1)*    *Pugh Failed to Preserve Error Regarding the State's Article 38.37 Notice*

Article 38.37 of the Texas Code of Criminal Procedure, titled "Evidence of extraneous offenses or acts," contains a Rule of Evidence applicable to certain types of sexual abuse cases, including this one. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2014). In 2013, Sections 2 and 2–a were added to Article 38.37 to "allow evidence that a person had committed certain previous criminal offenses with any child victim to be admitted into trials for certain offenses with child victims." Act of May 28, 1995, 74th Leg., R.S., ch. 318, § 48, 1995 Tex. Gen. Laws 2734, 2748–49, *amended by* Act of May 17, 2013, 83d Leg., R.S., ch. 387, § 1, secs. 2, 2–a, 2013 Tex. Sess. Law Serv. 1168, 1169 (West) (effective Sept. 1, 2013); HOUSE COMM. ON CRIMINAL PROCEDURE REFORM. SELECT, BILL ANALYSIS, Tex. H.B. 330, 83d Leg., R.S. (2013); *see* SENATE COMM. ON CRIMINAL JUSTICE, BILL ANALYSIS, Tex. S.B. 12, 83d Leg., R.S. (2013). Section 3 of Article 38.37 requires the State to "give the defendant notice of the state's intent to introduce" such evidence in the State's case-in-chief "not later than the 30th day before the date of the defendant's trial." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3.

Here, the State gave notice to Pugh that it would seek to introduce extraneous-offense evidence under Article 38.37. Pugh contends, however, that the State's notice failed to meet the statutory requirements of Article 38.37.

3

To preserve a complaint for appellate review, an appellant must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1(a)(1)(A); *Hartson v. State*, 59 S.W.3d 780, 787–88 (Tex. App.—Texarkana 2001, no pet.) (complaint of lack of notice of intent to use prior bad act, not preserved because no similar objection made at trial). Here, Pugh failed to object to the contents or timing of the State's notice.[3] Therefore, Pugh failed to preserve this issue for our review.

*(2)*     *The Trial Court Was Within Its Discretion to Admit Extraneous-Offense Evidence*

Pugh also argues that the trial court erred in allowing the admission of Article 38.37 extraneous-offense evidence. The relevant portions of Article 38.37 state,

(a)     Subsection (b) applies only to the trial of a defendant for:

    (1)     an offense under any of the following provisions of the Penal Code:

    . . . .

        (E)     Sections 22.021(a)(1)(B) and (2) (Aggravated Sexual Assault of a Child);

    . . . .

(b)     Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2–a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) . . . may be admitted in the trial of an alleged offense described by Subsection (a)(1) . . . for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

---

[3]During the pretrial hearing on Article 38.37 issues, Pugh objected "to any extraneous offenses coming into the State's case-in-chief under 38.37," arguing that it violated due process and the Fifth Amendment and was more prejudicial than probative.

4

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2. However, before such extraneous-offense evidence may be introduced at trial, the trial court must "(1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and (2) conduct a hearing out of the presence of the jury for that purpose." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2–a.

A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *see Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). "A trial court does not abuse its discretion if the decision to admit evidence is within the 'zone of reasonable disagreement.'" *Marsh v. State*, 343 S.W.3d 475, 478 (Tex. App.—Texarkana 2011, pet. ref'd) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). "If the trial court's decision on the admission of evidence is supported by the record, there is no abuse of discretion, and the trial court will not be reversed." *Id.* (citing *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); *Montgomery*, 810 S.W.2d at 379). Where there has been no abuse of discretion, we will not substitute our own decision for that of the trial court. *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)).

In the Article 38.37 hearing, the State sought to introduce evidence that Pugh had committed the extraneous offenses of aggravated sexual assault of a child with E.B. in Wood County, with C.M. in both Wood County and Rains County, and with the alleged victim in this

case, S.C., in Wood County. During the hearing, the court viewed recorded Child Advocacy Center (CAC) interviews from the three alleged victims.[4]

The victim of the charged offense, S.C., described two separate instances of Pugh sexually abusing her. The first occurred when she was in the sixth grade. She and Pugh were on the couch in the living room of Pugh's house when he took off her clothes and pulled his shorts and underwear down. He touched her vagina with his hand and stuck his finger into her vagina and then put his penis in her vagina. He told her not to tell anyone about it because he would get in trouble.

In her interview, extraneous-offense victim, C.M., said that she, her mother, and her sister lived with Pugh for several years. When she was six or seven years old, Pugh began sexually abusing her. The first time, Pugh forced her to perform oral sex on him. After that, Pugh forced her to have vaginal intercourse with him two to three times per week for about three years. Several times, Pugh told her that, if she told anyone about the abuse, he would kill her. The abuse having continued, C.M. believed she was in the fourth grade when she ran away from home. After she was apprehended, she was put on house arrest, and the abuse "got worse" because Pugh forced intercourse on her more frequently. Two or three weeks later, she made an outcry to her grandmother, and the abuse stopped. C.M.'s mother and Pugh "split up" about a year later.

Extraneous victim, E.P., twenty-one years' old at the time of trial, stated that Pugh first sexually abused her at her parent's home in Mineola when she was thirteen years old. She was in the bathroom, wearing a towel, about to take a shower when Pugh entered the bathroom, removed

---

[4]The State informed the trial court that it would call all three of the victims to testify at trial.

6

her towel, and had intercourse with her on the bathroom floor. At or near the end of her seventh-grade year, while she was babysitting at Pugh's house in Mineola, he forced her to have intercourse. A third and fourth instance of abuse occurred during the summer between her seventh- and eighth-grade years, when she and her parents were at Pugh's house getting ready for a party that would be held there later that night. Her parents would leave the house for a few minutes, and Pugh would "[do] it again." The abuse stopped when she told him that, if he did not stop, she would tell her father.

After viewing the recorded CAC interviews, the trial court found that the evidence likely to be admitted at trial, if believed, would be adequate to support a finding by the jury that Pugh had committed the extraneous offenses beyond a reasonable doubt. On appeal, Pugh argues that the extraneous-offense evidence regarding S.C. is insufficient because there was no evidence of (1) the county in which the offenses occurred, (2) Pugh's mens rea at the time the offenses were committed, or (3) the date of the offenses.[5] He does not challenge the admission of the extraneous-offense evidence regarding C.M. or E.B.

The trial court's responsibility at an Article 38.37 hearing is to determine whether "the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2–a. A person commits the offense of aggravated sexual assault of a child if he "intentionally or knowingly . . . causes the penetration of the anus or sexual organ of a child by

---

[5]In support of his arguments, Pugh exclusively cites the testimony of Karen, S.C.'s mother, and Martha Dykes, the program director of the CAC. However, Karen and Dykes testified as a part of the "outcry hearing," and their testimony was not before the trial court at the time it made its Article 38.37 ruling.

7

any means" and the child is younger than fourteen years of age. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (West Supp. 2014).

The county in which the offense occurred is not an element of the offense of aggravated sexual assault of a child under Section 22.021 of the Texas Penal Code. Rather, proof of the county in which an offense occurred is a jurisdictional requirement for the prosecution of an offense. Here, the State's Article 38.37 notice lists the county where each of the extraneous offenses allegedly occurred, and Pugh was not being prosecuted for the offenses at that time. Thus, for purposes of proving an extraneous offense under Article 38.37, there was no requirement that the State prove the county in which the extraneous offense occurred. *See Burke v. State*, 371 S.W.3d 252, 257 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd, untimely filed); *see also Malpica v. State*, 108 S.W.3d 374, 378 (Tex. App.—Tyler 2003, pet. ref'd) (citing *Stevenson v. State*, 963 S.W.2d 801 (Tex. App.—Fort Worth 1998, pet. ref'd)).

"Intent may . . . be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Here, the trial court could have found that Pugh's removing his and S.C.'s clothing, as well as his penetration of S.C.'s vagina, would support a rational jury's determination that the acts were committed intentionally or knowingly.

Pugh also contends that the extraneous-offense evidence was insufficient because there was no evidence of the date when the offenses allegedly occurred, as is required by statute. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (West Supp. 2014). Pugh's reliance is misplaced because Article 37.07, Section 3, entitled "Evidence of prior criminal record in all criminal cases

8

after a finding of guilty," is inapplicable because it governs the procedure for the admissibility of evidence at punishment, not guilt/innocence.[6] TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3 (West Supp. 2014).

In light of the Article 38.37 hearing, we cannot say that the trial court abused its discretion in finding that the evidence likely to be admitted at trial would be adequate to support a finding by the jury that the defendant intentionally and knowingly committed the separate offenses against S.C. beyond a reasonable doubt.[7] Accordingly, we overrule this point of error.

*(3)    There Is No Error in the Jury Charge*

In its jury charge, the trial court set forth the elements of the offense of aggravated sexual assault of a child and also submitted the following to the jury:

> You are instructed that if there is any testimony before you in this case regarding the defendant having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the intent of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

---

[6]In any event, failure to comply with Article 37.07 does not render extraneous-offense evidence per se inadmissible. *Roethel v. State*, 80 S.W.3d 276, 282 (Tex. App.—Austin 2002, no pet.). Unlike the Rules of Evidence, "[t]he notice requirement found in section 3(g) . . . does not relate to the substantive admissibility of the evidence." *Id*. Rather, because the "purpose of the notice requirement is to enable the defendant to prepare to meet extraneous offense evidence," a deficiency in the notice is analyzed on how it affected a defendant's ability to prepare for the evidence. *Id*.; *see Andrews v. State*, 429 S.W.3d 849, 860 (Tex. App.—Texarkana 2014, pet. ref'd); *James v. State*, 47 S.W.3d 710, 713 (Tex. App.—Texarkana 2001, no pet.). Here, S.C. and the other alleged victims, during the Article 38.37 hearing, testified in detail about the abuse they suffered at Pugh's hands and were subjected to his cross-examination. Consequently, Pugh does not claim on appeal that he was surprised by their testimony at trial or that the omission of the date on which the abuse occurred impaired his ability to prepare for their testimony at trial.

[7]Pugh does not contend that the evidence actually introduced at trial was insufficient to prove the extraneous offense beyond a reasonable doubt.

9

Pugh concedes that he did not object to the trial court's charge. He argues, however, that the jury charge should have contained an application paragraph for each of the extraneous offenses for which the State offered testimony.

Our review of alleged jury charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Initially, we determine whether an error occurred, and then "determine whether sufficient harm resulted from the error to require reversal." *Abdnor*, 871 S.W.2d at 731–32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), *reaff'd by Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

The purpose of the application paragraph is to apply the relevant law, definitions found in the abstract, and general legal principles to the particular facts of the case. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (citing *Gray v. State*, 152 S.W.3d 125, 127–28 (Tex. Crim. App. 2004)). Here, the specific application portion of the charge addressed only the State's allegation that Pugh committed aggravated sexual assault of S.C. and omitted any reference to the extraneous-offense instruction. However, we find that the Article 38.37 instruction present in the jury charge was an additional application instruction because, even though general in nature, the instruction applied the requirements of Article 38.37 to "any testimony" the jury heard "regarding the defendant having committed offenses other than the offense alleged against him in the

indictment."[8]  Further, Pugh has failed to cite any authority on point demonstrating that any further instruction or charge was required to be submitted to the jury.  We find no error in the jury charge.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:        February 13, 2015
Date Decided:          April 15, 2015

Do Not Publish

---

[8]We presume the jury obeyed this instruction.  *See Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003).